CHARLES CUSHING & others *vs.* WILLIAM C. AYLWIN.

The provision in the Rev. Sts. *c.* 62, § 3 — that lands acquired by a testator, after the making of his will, shall pass thereby, if such shall clearly and manifestly appear, by the will, to have been his intention — applies to wills made before those statutes took effect, as well as to wills made afterwards.

A testatrix, by a will made in 1834, devised to A. and P., and the survivor of them, his executors and administrators, all her property, including expressly the trust property which had been conveyed to A. and G. for her use, and the proceeds thereof in the hands of A.; said devise being in trust, with authority to A. and P. to pay the income to S., her nephew, and to pay the capital to S.'s children, &c. after his decease: The testatrix, in 1840, purchased land, but never republished her will. *Held*, that it appeared, by the will, that the testatrix, when she made it, did not intend to die intestate, as to any part of her property; that there was no reason to suppose that her intention was changed when she purchased land in 1840; and that the land, then purchased, passed to A and P., by her will.

WRIT OF ENTRY to recover three undivided fourth parts of a tract of land in Lynn. The case was submitted to the court upon the following statement of facts and agreement:

Elizabeth Doane duly made and published her last will, on the 30th of April 1834, and a codicil thereto, on the 19th of June 1835. In May 1841, she died without issue, leaving the demandants (her brother and two of her sisters) and another sister her only heirs. In July 1841, her said will was duly proved and allowed. At the time of making said will and codicil, she owned no real estate. On the 10th of December 1840, she purchased the land demanded in this suit, and was seized thereof at the time of her death. She did not republish her said will after the purchase of said land, nor at any time after making said codicil.

By said will, the testatrix, after ordering the payment of her debts, disposed of her property as follows: " *Second.* I bequeath unto William C. Aylwin and Charles C. Paine, and the survivor of them, his executors and administrators, all my property, including expressly the trust property which, on my marriage, was conveyed to the said Aylwin, and David S. Greenough, now deceased, by indentures bearing date the seventeenth day of June 1825, and the proceeds thereof now in the hands of said Aylwin; but nevertheless in trust and

subject to the following provisions, to wit, to invest the same, from time to time, in such stocks, public securities, or mortgages, as my said trustees, or the survivor of them, shall think the safest and most productive ; and, as circumstances may require, to alter, change, and reinvest the same, and on the receipt of the interest or income thereof, to pay over the same to my nephew, William Henry Sheafe, half yearly, or oftener if convenient. And if the said William Henry Sheafe should depart this life, leaving a widow, then to pay out of the capital to her the sum of five hundred dollars, and the residue to transfer, deliver and pay over, after his death, to his children, on their attaining the age of twenty one years, respectively, or to the descendants of such as may have deceased leaving issue, share and share alike ; the descendants to take their parents' share only. But if my said nephew should die without leaving children, or the descendants of children, then to pay over the remainder of the trust property to his brother and sisters, share and share alike, and to the children of such as may have deceased leaving issue. *Third.* Should my said nephew desire the purchase of a house and land to be made for his own occupation, and in the opinion of my said trustees the same can be judiciously effected, I hereby authorize my said trustees, or the survivor of them, to take a portion of the trust property for this purpose ; nevertheless, my said trustees shall take conveyances thereof in their names, and shall hold the same subject to the like trusts as are herein declared of and concerning the trust property bequeathed to them. *Fourth.* Should it so happen that my said nephew, William Henry Sheafe, should die before me, without issue, then I give and bequeath all said trust property to his brother and sisters, in equal shares, and to the children of any who may have deceased. *Lastly.* Revoking all other wills by me made, I direct that the aforesaid trustees shall not be held to give any bond for the execution of the trusts hereby created, and I do appoint them executors of this my last will."

The codicil was as follows : " I do hereby annul so much

of said will as bequeaths five hundred dollars to the widow of my nephew, William Henry Sheafe. In every other respect I confirm said will."

The parties agree that if the court shall be of opinion that the provision in the revised statutes, *c.* 62, § 3, extends to wills made before its passage, where the testator did not decease until afterwards, and that evidence that the real estate in question was purchased, in part or in whole, from out of the trust fund provided for or alluded to in said will, would be competent, as tending to prove the intent of the testatrix, then the tenant is to be at liberty to go into evidence, and, if necessary, to the jury, upon that point, if the court shall think proper so to direct. If the court should be of opinion that the said land did not pass under said will and codicil, then the tenant shall be defaulted, and judgment entered for the demandants to recover possession ; otherwise, the demandants shall become nonsuit.

*Paine,* for the demandants. The tenant will rely on the Rev. Sts. *c.* 62, § 3, which provide that " any estate, right, or interest in lands, acquired by the testator, after the making of his will, shall pass thereby in like manner as if possessed at the time of making the will, if such shall clearly and manifestly appear, by the will, to have been the intention of the testator." But this provision cannot apply to a will made previously to the time when those statutes took effect. In *Brigham* v. *Winchester,* 1 Met. 391, the court say, this provision " has materially changed the law as to *subsequent devises.*" The following cases seem to be direct to the same point. *Whitman* v. *Hapgood,* 10 Mass. 437. *Ashburnham* v. *Bradshaw,* 7 Mod. 239. *Serjeant* v. *Puntis,* Pre. Ch. 77. *Gillmore* v. *Executor of Shooter,* 2 Mod. 310. *Attorney General* v. *Andrews,* 1 Ves. sen. 225. 2 Dwarris on Sts. 680.

If the testatrix had republished her will after the revised statutes went into operation, the provision in question might have applied to it. But she did not ; and the fact of her dying after they took effect is not material. This point is similar to that which was decided in *Osgood* v. *Breed,*

12 Mass. 525, where a married woman made a will in her husband's lifetime, and lived two years after his decease, without republishing it. It was not allowed as her will.

By the express words of the Rev. Sts. c. 146, § 1, all the provisions contained in the preceding chapters shall take effect and go into operation "*from and after* the last day of April" 1836.

The provision in c. 62, § 3, is in derogation of the common law, and therefore should be strictly construed. In *Hayden* v. *Inhabitants of Stoughton*, 5 Pick. 536, it is said, "it is a rule that the heir at law is not to be disinherited, unless such appears clearly to be the intention of the devisor." See also *Ballard* v. *Carter*, 5 Pick. 114.

Even if the provision in the Rev. Sts. c. 62, § 3, can extend to this will, does the will "clearly and manifestly" show an intention to give after acquired estate ? The words are, "all my property, including expressly the trust property which, on my marriage, was," &c., "and the proceeds thereof *now* in the hands," &c. And the gift is to the trustees and their *executors and administrators* only, and not to their heirs ; thus apparently showing no intent to pass real estate, or any future proceeds of the trust property.

The testatrix must be presumed to have known the rules of law on this point. However strong her language, she knew that her will could not, and therefore must have expected that it would not, pass after acquired real estate.

*C. G. Loring & C. W. Loring*, for the tenant. The Rev. Sts. c. 62, § 3, apply to all wills presented for probate after those statutes took effect, and not to such wills only as should be subsequently made. That the legislature had authority to pass a law affecting all wills subsequently proved, though previously made, is shown by several analogous cases. *Burghardt* v. *Turner*, 12 Pick. 539. *Annable* v. *Patch*, 3 Pick. 363. *Miller* v. *Miller*, 16 Mass. 59. *Holbrook* v. *Finney*, 4 Mass. 568. The intent of the provision in question was, to enlarge the power to dispose of property by will, by removing a difficulty caused by a technical rule

of law, and by effecting the actual intention of the testator. And that it was intended to embrace all wills subsequently proved appears not only from its language, but also from $ 4, which speaks of " every devise of land, in any will *hereafter made.*" The use of these words, in $ 4, shows that a studied distinction was made between that and the previous section. This intention is further shown by the legislative construction given to $ 6, which provides that " no will " shall pass even personal estate, unless attested by three witnesses. As there is nothing to limit this provision to wills subsequently made, and it was therefore feared that wills of personal property, though executed according to the former law, might be held void, the legislature, by *St.* 1838, *c.* 2, provided that such wills should be allowed, notwithstanding the Rev. Sts *c.* 62, $ 6.

The question now before the court did not arise in *Brigham* v. *Winchester*, 1 Met. 391, and what is there said as to the effect of the Rev. Sts. *c.* 62 on "subsequent devises " was a mere *dictum.* Besides ; it is not certain that by "subsequent devises " the court did not mean devises which should take effect subsequently to the operation of the revised statutes.

The case of *Whitman* v. *Hapgood*, 10 Mass. 437, is not in point. The question there was as to the effect of a subsequent law on the construction of a deed previously executed and delivered ; and it was well held, that it was to be construed by the law which was in force when it was delivered. The cases cited from 7 Mod. & 1 Ves. sen. relate to the effect of the statutes of mortmain ; and the reason given for those decisions is, that it would cause great confusion, if wills made before those statutes should be construed in a different way, by reason of the statutes, though not affected by the statutes.

Nothing was decided in the case cited from 2 Mod. except that the statute of frauds did not take away a right of action which accrued before the statute went into effect. And the reason of the decision in *Osgood* v. *Breed*, 12 Mass. 525, was, that the will was void *ab initio*, and therefore could not

acquire any vitality, except from the act of the maker after she became competent ; and there was no such act.

The language of this will is sufficiently expressive of the intent to convey real estate subsequently acquired : " All my *property*, including expressly the trust property and the proceeds thereof." The law requires only the expression of such an intent in the will as to real estate, and such words as, by settled usage and law, are considered as expressive of the intent as to personal estate.

If the land in question was purchased with the proceeds of the trust fund, then the intent of the testatrix indisputably appears in the will, because she specifically devises the proceeds of that fund.

*Paine*, in reply. The investing of a part of the trust fund in real estate (if it was so invested) no more manifests an intent to bring the real estate into the fund and under the will, than the opposite intent to take so much money out of the fund and out of the will.

WILDE, J. The question in this case is, whether the title of Elizabeth Doane passed to the tenant by her last will and testament, or descended to her heirs at law. Her will was made prior to the revised statutes, and the land demanded was purchased by her afterwards. The demandants contend that the Rev. Sts. *c.* 62, § 3, do not apply to a will previously made. But we think there is no sufficient reason for this limited construction of the statute. The object of the statute was to obviate an inflexible rule of the existing law, which had been found to operate injuriously, by defeating, not unfrequently, the intention of the testator, however clearly expressed ; and there seems to be no good reason why the provision should not apply as well to wills made before as to those made after the statute, when the will had not taken effect, before that time, by the death of the testator. That the legislature had the constitutional power to enact such a law is not to be denied ; and we think that such was their intention. The language is general, and not restricted in its application to wills made after the statute. In the next

section there is such an express restriction; which is, we think, a strong indication of the intention of the legislature not to make a like restriction in the former section.

The remaining question is, whether it appears "clearly and manifestly" by the will that all the property, which the testatrix possessed at the time of her death, was intended by her to pass by her will.

We think it is generally true, that when a will purports to dispose of the testator's whole estate or property, the intention is to dispose of all the estate or property, of which the testator may be the owner at the time of his death; and that such intent would be inferred, unless something in the will should be opposed to such an inference. In the present will, nothing opposed to such an inference is to be found; but, on the contrary, it is confirmed by the disposition made of the trust fund. It was manifestly the intention of the testatrix to give her whole property to her nephew W. H. Sheafe, and his children, and that he should have only the income, and that, at his death, the property should be divided among his children; and for this purpose the property was given to trustees. It is manifest, therefore, that the testator did not intend to die intestate as to any of her property. And there is no reason to suppose that her intention was changed when she purchased the demanded premises in 1840. We have therefore no doubt that they passed, by her will, to the tenant.

*Demandants nonsuit.*